UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES -- GENERAL

Case No.   **SA CV 12-00097-VBF-DTB**         Dated:    June 12, 2014

Title:   *David Elkins, Petitioner v. Fred Foulkes (Warden), Respondent*

PRESENT:   HONORABLE VALERIE BAKER FAIRBANK, U.S. DISTRICT JUDGE

| N/A | N/A |
|---|---|
| Courtroom Deputy | Court Reporter |

ATTORNEYS PRESENT FOR APPELLANT           ATTORNEYS PRESENT FOR APPELLEES

N/A                                                                                       N/A

**PROCEEDINGS (IN CHAMBERS):**   ORDER   (1)   Overruling the Petitioner's Objections;
(2)   Adopting the R&R in Part;
(3)   Declining to Adopt the R&R in Part;
(4)   Denying Habeas Petition for Lack of Merit;
(5)   Denying a Certificate of Appealability

This is a state prisoner's action for habeas corpus relief pursuant to 28 U.S.C. § 2254. The Honorable Davit T. Bristow, United States Magistrate Judge, has issued a Report and Recommendation ("R&R") recommending the denial of the habeas petition for lack of merit and denial of a certificate of appealability ("COA"). As recommended by the R&R, the Court will deny all three claims in the habeas petition for lack of merit. The Court will decline to adopt several portions of the R&R, either because the Court does not agree with all of its rationale (such as reliance on Ninth Circuit precedent) or because the Report addresses an issue which

does not need to be decided in the posture of this case.[1]  The Court will then decline to issue a COA.  Finally, the Court will enter judgment in favor of the respondent and against the petitioner by separate document.

ABBREVIATED BACKGROUND AND PROCEDURAL HISTORY

In 2008 a state-court jury convicted petitioner of second-degree murder and found that he had personally used a knife during the murder.  The trial court found that petitioner had a prior strike conviction and sentenced him to a term of 31 years to life in state prison.  On direct appeal, petitioner raised claims corresponding to grounds one and two herein, contending that the trial court erred by failing to instruct the jury about the lesser included offense of involuntary manslaughter, and that his trial counsel rendered constitutionally ineffective assistance by failing to request such an instruction.  Defendant admitted that he slashed the throat of one Fisher, who died from that injury, and defendant did not claim that he acted in defense of himself or others.  The California Court of Appeal affirmed, recounting the evidence in part as follows:

> One afternoon, defendant, a female acquaintance, and another person went for a ride in a car driven by the victim John Fisher.  At one point, the group stopped and smoked methamphetamine. Later, while seated in the car behind Fisher, defendant reached forward and slashed Fisher's throat, killing him.

---

[1]Specifically, the Court will decline to adopt:

Page 17 lines 4 through 19 (starting with "Moreover, the Court concurs" and ending with "instruct the jury, sua sponte, on involuntary manslaughter.");

Page 15 lines 11 through 14, the sentence which begins "The burden of demonstrating" and ends with the citation of *Henderson*, 431 U.S. at 154;

Page 19 lines 6 through 28 (alternative holding based on *Brecht* prejudice);

Page 43 line 26 (starting with "*See Torres*, 223 F.3d at 1108") through and including the citation to *Panah*, 35 Cal.4th at 434 n.10 at Page 44 line 9;

any language suggesting that the availability of federal habeas relief turns on the state courts' compliance with the holdings of the U.S. Court of Appeals for the Ninth Circuit.

>Defendant testified in his own defense. He gave the following account of the events leading to Fisher's death.
>
>He met Fisher two months before the killing and learned Fisher was an "enforcer" for a gang. Fisher told defendant his work as an enforcer involved killing people. Defendant also claimed that, for six weeks before the killing, he used drugs, including "smoking meth[amphetamine] every day . . . ." His drug use caused him to hallucinate, hear voices, cry constantly, and lose sleep.
>
>On the day of the homicide, Fisher took the group for a ride. After they smoked methamphetamine, Fisher continued driving the group around, eventually stopping at a liquor store. Both he and defendant got out of the car. Defendant claimed Fisher then said he thought defendant and the car's other two occupants were informants and he would kill the three of them if they did anything. Later, the woman handed defendant a knife. Shortly thereafter, Fisher made a sudden turn and hit the brakes. Defendant claimed he saw flashing lights. The woman began to leave the car, but Fisher tried to grab her and demanded to know where she was going. At that point, defendant claimed, he "snapped" and slit Fisher's throat.

*People v. David Elkins*, 2010 WL 1918689, *1 (Cal. App. 4th Dist. May 13, 2010). As the Court of Appeal recounted, the defense called a psychiatrist, who testified based on his review of police reports, the coroner's report, photographs, and his three interviews of petitioner, *see id.* The defense psychiatrist testified generally that methamphetamine use can cause paranoia, hallucinations, and delusional thinking, *id.* He testified more that based on what petitioner had told him, petitioner engaged in a pattern of chronic meth usage in the months before killing Fisher, *id.* Given a hypothetical based on petitioner's version of events, the psychiatrist opined that at the time he killed Fisher, petitioner's behavior was consistent with being under the influence of meth, *id.*

**As the Court of Appeal noted, the trial court had instructed the jury on** first- and second-degree murder (CALCRIM 520, 521, and 522); voluntary manslaughter based on the heat of passion (CALCRIM 570), voluntary manslaughter based on imperfect defense of self or others (CALCRIM 571), and *in*voluntary manslaughter resulting from voluntary intoxication causing unconsciousness (CALCRIM 526). *See Elkins*, 2010 WL 1918689 at *2. The court also instructed the jury that they could consider evidence of petitioner's hallucinations in determining whether he had killed Fisher with premeditation and deliberation (CALCRIM 627). Finally, the court instructed the jury that they could consider petitioner's voluntary intoxication in determining whether he acted with the intent to kill and with premeditation and deliberation (CALCRIM 625).

**On appeal, petitioner argued that there was substantial evidence that he suffered from a mental defect due to his prolonged meth use, and that the trial court therefore had a duty to *sua sponte* instruct the jury that it could convict him of involuntary manslaughter if it found that that mental defect prevented him from harboring express or implied malice,** see Elkins, 2010 WL 1918689 at *2. **Rejecting this argument, the Court of Appeal reasoned as follows:**

> [Petitioner] did request instructions on [petitioner]'s voluntary intoxication with respect to the degree of murder and whether it reduced Fisher's killing to involuntary manslaughter. The court further instructed the jury on the effect of [petitioner]'s purported hallucinations in considering his criminal liability for murder.
>
> To have the jury instructed concerning the effect of a mental defect or disorder on his criminal liability, [petitioner] needed to request it and show substantial evidence supported giving the instruction. [California citation]  The Attorney General contends neither requirement was met here.
>
> Even assuming [the defense psychiatrist]'s testimony supported a conclusion [that] the [petitioner] suffered from a mental disorder or defect caused by his methamphetamine use, since the trial court did not have [a] *sua sponte* duty [sic] to give such an instruction, defendant's failure to request it results in a waiver of this claim on appeal. [California citation omitted]
>
> *For the reasons expressed in Saille* [54 Cal.3d 1103, 820 P.2d 588, 2 Cal.Rptr.3d 364 (Cal. 1991) (unanimous)] *and Ervin* [22 Cal.4th 48, 990 P.2d 506, 91 Cal. Rptr.2d 623 (Cal. 2000)]*, we also reject the [petitioner]'s claim that failure to instruct, sua sponte, on the effect of a drug-induced mental defect or disorder violated his federal constitutional rights.*

*Elkins*, 2010 WL 1918689 at *4. In *People v. Saille*, the California Supreme Court considered a case where the trial court had instructed the jury that it could consider the defendant's voluntary intoxication in determining whether he acted with the intent to kill. *See Elkins*, 2010 WL 1918689 at *3. On appeal from his conviction for first-degree murder, defendant Saille argued that the trial court had erred in failing to further instruct the jury *sua sponte* that it could consider his intoxication in determining whether he had acted with premeditation and deliberation. *See id.* After noting that the California Legislature abolished the diminished-capacity defense in 1981, *id.* at *2, the Court of Appeal summarized *Saille* as follows:

> The [California] Supreme Court rejected this argument. "The withdrawal of diminished capacity as a defense removes intoxication from the realm of defenses to crimes. Intoxication is now relevant only to the extent that it bears on the question of whether the defendant actually had the requisite specific mental state. Thus it is now more like 'pinpoint instructions . . . , to which a defendant is entitled upon request . . . when there is evidence supportive of the theory, but they are not required to be given *sua sponte*."
>
> Therefore, while a defendant "may seek a pinpoint instruction . . . Such a pinpoint instruction does not involve a general principle of law as that term is used in the cases that have imposed a sua sponte duty of instruction on the trial court.

*Elkins*, 2010 WL 1918689 at *4 (internal citations to *Saille* and other California cases omitted) (¶ break added).

**Finally, the Court of Appeal rested its rejection of petitioner's instructional-error claim on the decision in state-court decision in *Ervin*.** There, the California Supreme Court

> followed *Saille* in rejecting a claim that the trial court failed to sua sponte instruct regarding the effect of a mental disease, defect, or disorder on his ability to deliberate or premeditate, where a defense psychiatrist opined that the defendant's past heavy cocaine and heroin use amounted to a substance use disorder that could have impaired his ability to reason and make sound judgments, and thus he could not use the kind of judgment that he might have been able to use if he was not so heavily involved in the cocaine and heroin.
>
> Citing *Saille*, the Supreme Court [in *Ervin*] held "by similar reasoning, sua sponte instructions on the actual effect of the defendant's mental disease or disorder on his relevant mental state became unnecessary with the abolition of the mental disease / diminished[-]capacity doctrine."

*Elkins*, 2010 WL 1918689 at *3 (state-law citations, internal quotation marks, and ellipses omitted).

**After the California Supreme Court summarily denied petitioner's petition for review, petitioner filed original habeas petitions in the Superior Court, California Court of Appeal, and California Supreme Court.** The Superior Court petition (filed March 2011 and denied in a reasoned opinion in April 2011), raised claims corresponding to grounds 1 and 2. The Court of Appeal petition (filed May 2011 and summarily denied June 2011) asserted claims corresponding to all the grounds in our petition. The Supreme Court petition (filed July 2011 and summarily denied in November 2011) asserted claims mostly corresponding to the claims herein.

MINUTES FORM 90                                          Initials of Deputy Clerk ___jmb____
CIVIL - GEN

ANALYSIS: GROUND 1, INSTRUCTIONAL ERROR

Petitioner claims that the trial court violated his Sixth Amendment right to due process of law by failing to *sua sponte* deliver an additional jury instruction on *in*voluntary manslaughter – this time CALCRIM 580, involuntary manslaughter as a lesser included offense of the charged murder – despite evidence at trial which supported such an instruction. The Magistrate is right to conclude (R&R at 17-20) that this claim lacks merit.

As the Magistrate notes (R&R at 18), the trial court did deliver three instructions to the jury, requested by petitioner's counsel, about the possible legal significance of petitioner's alleged methamphetamine intoxication at the time he admittedly fatally slashed the throat of the victim, Fisher: CALCRIM 625 to consider evidence of voluntary intoxication in determining whether he acted with the intent to kill; CALCRIM 626 to authorize the jury to find that he committed only involuntary manslaughter resulting from voluntary intoxication causing unconsciousness; and CALCRIM 627 to consider evidence of petitioner's alleged hallucinations in determining whether he acted with premeditation and deliberation. The Magistrate cogently reasons (R&R at 18-19) that the trial court *did* instruct the jury on involuntary manslaughter, merely on the theory of unconsciousness through voluntary intoxication, and "[t]he fact that the jury found petitioner guilty of second[-]degree murder demonstrates [that] the jurors rejected the defense theory of involuntary manslaughter."

**In its analysis of this instructional-error claim, however, the Report sometimes relies on Ninth Circuit precedent to supply the legal standard (i.e., the interpretation of the U.S. Constitution) with which the state court had to comply.** For example, the Report states,

> The Ninth Circuit explicitly has held that the '[f]ailure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1984); *see Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state court to instruct on lesser included offenses in a capital case does not present a federal constitutional question."); *Messer v. Runnels*, 329 F. App'x 102, 104 (9th Cir. 2009); *Kopy v. Ryan*, 319 F. App'x 666, 669 (9th Cir. 2009).  * * *

R&R at 15-16. Because these claims are covered by AEDPA, however, this Court could award habeas relief only if petitioner showed the state courts ruled contrary to or unreasonably applied some holding *of the U.S. Supreme*

*Court*. Ninth Circuit holdings are not part of "clearly established federal law" for purposes of AEDPA; rather, "[f]or state prisoners who seek federal habeas relief pursuant to 28 U.S.C. § 2254, AEDPA requires them to show that a state court violated 'clearly established Federal law', defined as only the holdings (as opposed to dicta) of the United States Supreme Court at the time of the relevant [state-court] decision." *US v. Sayre*, 2013 WL 3872172, *10 (C.D. Cal. Apr. 30, 2013) (Fairbank, J.) (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495 (2000) ("The . . . statutory language makes clear . . . that § 2254(d)(1) restricts the source of clearly established law to this Court's jurisprudence.") and *Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649 (2006)).[2]

As the Supreme Court put it, "If this Court has not broken sufficient legal ground to established an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar." *Williams*, 529 U.S. at 381, 120 S. Ct. at 1506-07. "This is a retrenchment from former practice, which allowed the United States courts of appeals to rely on their own jurisprudence in addition to that of the Supreme Court." *Williams*, 529 U.S. at 381, 120 S. Ct. at 1507 (citation and quotation marks omitted). Consequently, "'[o]nly the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied' for a state-court decision to survive AEDPA review." *Sayre*, 2013 WL 3872172 at *10 (quoting *Moses v. Payne*, 555 F.3d 742, 759 (9th Cir. 2009)); *see also Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).[3] This statutory "formulation [of clearly established federal law]" is so strictly applied that it generally excludes not only circuit precedent but even "concurring . . . opinions of individual Justices" of the Supreme Court. *See Jackson v. Calter*, 337 F.3d 74, 84 (1st Cir. 2003).

---

[2] *Accord Jimenez v. Walker*, 458 F.3d 130, 146 (**2d Cir.** 2006) (citing *Williams*, 529 U.S. at 412); *Landrum v. Mitchell*, 625 F.3d 905, 914 (**6th Cir.** 2010) ("In analyzing whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may consider only the holdings of the United States Supreme Court's decisions at the time the relevant state court rendered its decision.") (citing, *inter alia*, *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166 (2003)); *Guzman v. Sec'y, Dep't of Corrs.*, 663 F.3d 1336, 1348 n.14 **(11th Cir.** 2011) (citing, *inter alia*, *Williams*, 529 U.S. at 412).

[3] In the same vein is *Grant v. Trammell*, 727 F.3d 1006, 1020 (10th Cir. 2013), issued in the wake of *Marshall v. Rodgers*, where the Tenth Circuit stated, "Of course we can only fault the OCCA [Oklahoma Court of Criminal Appeals] for failing to abide Supreme Court precedent, not our own." *Id.* at *10 (citing 28 U.S.C. § 2254(d)(1)).

In 2013, our Circuit issued a published decision reiterating its view that "'[a]lthough only Supreme Court holdings are binding on state courts,' 'circuit precedent may provide persuasive authority for purposes of determining whether a state court decision is an 'unreasonable application' of Supreme Court precedent.'" *Dyer v. Hornbeck*, 706 F.3d 1134, 1139 (9th Cir. 2013) (citations omitted)), *cert. denied o.g.*, – U.S. –, 134 S. Ct. 82 (2013); *see also Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (citing *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999)). However, the case *Dyer* quoted as authority to consider circuit precedent as persuasive authority under AEDPA – *Rodgers*, 678 F.3d 1149 – was reversed by *Rodgers v. Marshall,* 133 S. Ct. 1446, *reh'g denied*, – U.S. –, 133 S. Ct. 2408 (2013). As Judge Gutierrez of our court explains *Rodgers*,

> the Supreme Court reversed a Ninth Circuit decision granting habeas relief to a defendant who waived his right to counsel, was convicted, and sought (but was denied) the reappointment of counsel for the purpose of bringing a motion for new trial, finding that *the Ninth Circuit's reliance on circuit precedent as the basis for finding § 2254(d)(1) satisfied constituted "error."*

*Saldivar v. Uribe*, 2013 WL 3946106, *7 (C.D. Cal. July 31, 2013) (emphasis added). Indeed, even before *Marshall*, the Supreme Court had reversed other circuit courts that had measured the propriety of habeas relief in AEDPA cases according to circuit precedent. The Court here relies on *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649 (2006) and *Miller v. Rodriguez*, 549 U.S. 1163, 127 S. Ct. 1119 (2007). As a sister circuit explained,

> * * * In *Musladin* the Supreme Court held that Supreme Court law was not clearly established under circumstances in which circuit courts "diverged widely" in their interpretations of the law. * * *

> * * * In the original *Rodriguez v. Miller* disposition ("*Rodriguez I*") the Second Circuit granted habeas based on [the Supreme Court's decision in] *Waller interpreted through the lens of Second Circuit precedent*. The Supreme Court then vacated and remanded the case for reconsideration in light of *Musladin*. * * *

> In the *Rodriguez* cases, the defendant challenged the exclusion of his family from the courtroom but conceded that the exclusion of the rest of the public was consistent with [the Supreme Court's decision in] *Waller*. In *Rodriguez I*, the Second Circuit held that clearly established federal law placed a particular emphasis on allowing defendants to have family in the courtroom. This

> holding was based on *Waller as construed in prior Second Circuit cases*. Finding that exclusion of family members "requires stricter scrutiny than" exclusion of members of the public – something not discussed by the Supreme Court in *Waller* – the Second Circuit held that Rodriguez's Sixth Amendment right to a public trial had been violated.
>
> *On appeal, the Supreme Court vacated and remanded this holding in light of Musladin. The Second Circuit interpreted the Supreme Court's directive on remand as an admonishment to apply only Supreme Court holdings as "clearly established federal law"' under § 2254(d)(1) and that the decisions of the courts of appeals cannot provide clearly established federal law. Rodriguez II*, 537 F.3d at 109.
>
> Because the Second Circuit had relied on its own precedent to differentiate Rodriguez's family from the general public, it was obligated to find [on remand] that the state court had not unreasonably applied the [Supreme Court's] *Waller* test . . . . *Id.* at 109-110 . . . .

*Drummond v. Houk*, 728 F.3d 520, ____ (6th Cir. 2013) (J. Cole, joined by J. Griffin) (emphasis added) (internal cites & quote marks omitted), *pet. cert. filed*, 82 U.S.L.W. 3262 (U.S. Oct. 15, 2013) (No. 13-496); *see also Holley v. Yarbrough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (federal habeas relief was unavailable where state trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but was not contrary to or an unreasonable application of any U.S. Supreme Court holding).

**Therefore, this Court has considered Circuit decisions only for the limited purpose permitted by *Musladin* and *Marshall*: "to ascertain whether [the Circuit] has already held that the particular point in issue is clearly established by Supreme Court precedent[.]"** *See Marshall,* – U.S. –, 133 S. Ct. at 1451; *see, e.g., Lemke v. Ryan*, 719 F.3d 1093, 1101 (9th Cir. 2013) ("Although the clearly established law required by § 2254(d)(1) must be found in Supreme Court, not circuit court, decisions, we may examine our own precedent to see whether we are bound by one of our decisions that 'has already held that the particular point in issue is clearly established by Supreme Court precedent.") (quoting *Marshall*, 133 S. Ct. at 1450), *pet. cert. filed* (U.S. Dec. 12, 2013) (Nos. 13-7816 and 13A378); *Biggs v. Sec'y of Calif. Dep't of Corrs.*, 717 F.3d 678, 690 (9th Cir. 2013) (after *Marshall*, circuit precedent is relevant only if prior circuit precedent had held that *a Supreme Court holding* had clearly established some proposition, e.g., "we would owe deference to a clear on-point holding [by

the Circuit] that as-applied analysis is required under clearly established federal law [in the form of a Supreme Court holding] in this context"), *as amended on denial of reh'g & reh'g en banc* (9th Cir. Sept. 4, 2013).

This Court has not held the California state courts to compliance with the holdings of any Ninth Circuit decision, nor has this Court "canvass[ed]" Ninth Circuit decisions or "circuit decisions [around the country] to determine whether a[ny] particular rule of law is so widely accepted among the Federal circuits that it would, if presented to [the Supreme] Court, be accepted as correct", which is also expressly prohibited by *Marshall*, 133 S. Ct. at 1451. **Specifically, this Court disclaims any impression the R&R may have given that we have used the Ninth Circuit's holdings regarding the duty to instruct the jury *sua sponte* about lesser-included offenses "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced"**, *Rodgers v. Marshall*, 2013 WL 3819551, *1 (C.D. Cal. July 19, 2013) (quoting *Marshall*, 133 S. Ct. at 1450).

**Accordingly, the Court must decline to adopt the quoted language at R&R page 15 line 20 through R&R page 16 line 3. Rather, the basis for this Court's rejection of Ground 1 is simply this:** petitioner has failed to identify any U.S. Supreme Court decision holding that a trial court has a constitutional duty to sua sponte instruct the jury on lesser included offenses in a non-capital case. *Cf., e.g., Morgan v. Cate*, 2013 WL 5937478, *28 (C.D. Cal. Oct. 31, 2013) (denying section 2254 due process claim without mentioning any circuit precedent, stating, "petitioner points to no Supreme Court case that clearly establishes his right to call a witness without that witness first speaking with court-appointed counsel, or that holds that a defendant's due process rights are violated when a defense witness who is in custody testifies in restraints and a jail uniform. * * * Accordingly, the Court finds that petitioner has failed to meet his burden of showing that there was no reasonable basis for the California courts to deny petitioner's claim pertaining to his right to call a defense witness.").

**That obviates the need to consider whether petitioner could have shown *Brecht* prejudice if it had been a federal constitutional violation for the trial court to decline to sua sponte deliver the lesser-included-offense instruction. Accordingly, the Court declines to adopt R&R page 19 lines 6 through 28.**

The Magistrate's analysis of the instructional-error claim further correctly notes, "The Ninth Circuit has also held that *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 . . . (1989), bars application of a rule that the trial

court has a duty to instruct [sua sponte] on lesser included offenses in a non-capital case." R&R at 16 (citing, *inter alia*, *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000)). **Finally, the Magistrate's analysis of the instructional-error claim (R&R at 15 lines 11-14) accurately notes Supreme Court precedent emphasizing how difficult it is to demonstrate that an erroneous jury instruction was so prejudicial as to warrant federal habeas relief.** The Court would note, however, that petitioner has not contended that the instructions given by the trial court were themselves erroneous, only that the trial court should have delivered an additional instruction. **Therefore, the Court declines to adopt the sentence in the R&R at 15:11-14 which begins "The burden of demonstrating" and ends with the citation of** *Henderson***, 431 U.S. at 154.**

**Petitioner's objection to the Report's analysis of this instructional-error claim is conclusory and fails to specifically identify some legal or logical defect in the Magistrate's reasoning.** *See* Pet's Objections (Doc 23) at 2 (stating, in its entirety, "*Duckett* . . . (9th Cir. 1995) . . . is clearly instructive and sets forth the law as established by the Supreme Court. The error was not harmless. For the same reason it is no defense to murder that the victim would die someday, anyway, no one can say post hoc that a jury uninformed of a manslaughter instruction would not have chosen the lesser punishment under the instruction not given.").

ANALYSIS: GROUND 2, INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL
Exhaustion and Procedural Bars relating to the Ineffective-Assistance Claims

In Ground Two (Pet Mem at 5), petitioner claimed that his trial attorney rendered constitutionally ineffective assistance of counsel ("IAC") in seven respects (subclaims 1 - 7). Petitioner's Traverse belatedly claimed (Trav at 2-3) that that same attorney rendered IAC in nine additional respects (subclaims 8 - 16), which the Magistrate agreed to consider after receiving a supplemental response brief from the respondent (R&R at 12). The Court would further note the U.S. Supreme Court's recent pronouncement which emphasizes the deference which federal habeas courts owe to state-court adjudication of ineffective-assistance claims. "As the Supreme Court most recently advised in *Burt v. Titlow*, deference should be granted to state court decisions particularly where a case concerns 'such a common claim as ineffective assistance of counsel under *Strickland* – a claim state

courts have now adjudicated in countless criminal cases for nearly thirty years.'" *Jackson v. McQuiggin* , 553 F. App'x 575, 582 (6th Cir. 2014) (quoting *Burt v. Titlow*, – U.S. –, –, 134 S. Ct. 10, 16 (2013)).

**The Magistrate correctly determines that petitioner has failed to show he exhausted six IAC subclaims, numbers 10-15.** *See* R&R at 28-29. The undersigned agrees that consequently, these subclaims will not be considered. Petitioner does not object to this exhaustion determination.

**The Magistrate also correctly determined that petitioner exhausted these ten IAC subclaims:**

| | |
|---|---|
| 1 | failure to file significant motions - denied by Superior Court on habeas |
| 2 | failure to adequately cross-examine - Superior Court denied on habeas |
| 3 | wrongly stipulating to numerous points - Superior Court denied on habeas |
| 4 | failed to instruct investigators - Superior Court denied on habeas |
| 5 | failed to provide a comprehensive and conscientious defense - Superior Court denied on habeas |
| 6 | failed to request a competency hearing - Superior Court denied on habeas |
| 7 | failed to question defense expert about a mental-defect defense - Superior Court denied on habeas |
| 8 | failure to request additional jury instruction about involuntary manslaughter - Court of Appeal denied for lack of merit on direct appeal |
| 9 | failure to request a competency hearing |
| 16 | failure to present a comprehensive defense to the jury |

**The Magistrate notes respondent's argument that IAC subclaims 1-7 may be procedurally defaulted.** This is because the Superior Court decision stated in the alternative that those claims lacked merit, but first cited an authority indicating that the habeas petition raising these claims was untimely. *See* R&R at 30-31. (Petitioner does not object to the suggestion that these claims might be procedurally defaulted, *see* Doc 23.) The Magistrate rightly notes, however, that the Court has discretion to deny these claims on their merits even if they might be defaulted. In other words, there is no need to determine whether these claims are procedurally defaulted or, if so, whether petitioner can establish eligibility for an exception to the procedural default. *See* R&R at 31-32. "Title 28 U.S.C. § 2254(b)(2) states that a habeas petition 'may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the court of the state.'" *Alvarez v. Lopez*, 2014 WL 2206557, *5 n.4 (C.D. Cal. May 23, 2014) (Fairbank, J.). The undersigned agrees that it is more efficient to deny IAC subclaims 1-7 on the merits, whether defaulted or not, because "it is 'perfectly clear'" that they "raise[] no colorable federal claim" for habeas relief under AEDPA. *See Holt v. Lewis*, 2014 WL 2557562, *17 (C.D. Cal. June 5, 2014) (quoting *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005)); *see, e.g.,*

*Bell v. Cone*, 543 U.S. 447, 451 and n.3, 125 S. Ct. 847 (2005) (applying § 2254(b)(2) to reach the merits of unexhausted but clearly meritless claim); *Murray v. Schriro*, 746 F.3d 418, 447 (9th Cir. 2014) (same).

<u>Merits of Ineffective-Assistance Claim Regarding Jury Instruction (Subclaim 8)</u>

**The Court of Appeal concluded its opinion on direct appeal by rejecting petitioner's argument that his trial attorney was incompetent by failing to request that the trial court modify the involuntary-manslaughter instruction (CALCRIM 580) to add a reference to mental defect/disorder.** Petitioner argued that the instructions given limited the jury to an untenable choice between murder and theories of manslaughter not supported by the evidence. *See Elkins*, 2010 WL 1918689 at *4. Petitioner also argued that counsel had no tactical reason not to request modification of the involuntary-manslaughter instruction, *id.*

The Court of Appeal first stated that there was evidence instructions which petitioner's counsel did request and which were delivered to the jury, *see id.* That Court next stated that the record showed petitioner's counsel had considered requesting a mental-defect modification to the involuntary-manslaughter instruction and consciously chose not to make the request, *see id*. **It concluded by rejecting the ineffective-assistance claim solely on the ground that petitioner failed to show that his attorney performed deficiently** in choosing not to request the mental-defect modification to the involuntary-manslaughter instruction:

> Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel, and there is a strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance. We accord great deference to counsel's tactical decisions, and we have explained that courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight. Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. This deference to tactical decisions applies where defense counsel declines to request [that] the jury be instructed on a particular point of law. Thus, the record fails to support any suggestion that [petitioner]'s trial attorney was incompetent in his choice of theories to be presented to the jury.

*Elkins*, 2010 WL 1918689 at *4 (internal quotation marks, brackets, and alterations omitted) (internal California citations omitted). The Court of Appeal intimated no opinion as to whether any deficient performance by

petitioner's trial attorney on this score would have caused him prejudice. The California Supreme Court issued an Order (LD 8) summarily denying petitioner's ensuing petition for review without comment or citation.

Petitioner's Ineffective-Assistance SUBCLAIMS 1-8 LACK MERIT

**There is nothing to add to the Magistrate's sensible agreement with the Court of Appeal's characterization of the first six IAC subclaims as vague, conclusory, and unsupported by evidence and argument:** (1) failure to file motions to suppress unspecified evidence; (2) failure to adequately cross-examine unidentified witnesses about unidentified matters; (3) failure to rebut unspecified testimony by unspecified witnesses; (4) improperly stipulating to admission of the knife used to kill Fisher, the clothes petitioner wore when he killed Fisher, and samples of blood from petitioner and Fisher, without any explanation of why it was incompetent for counsel to stipulate rather than calling more attention to that evidence by contesting its admission, and without any explanation of how petitioner was prejudiced by the stipulations; (5) failure to instruct a defense investigator in unspecified fashion, with no details whatsoever about the nature and scope of defense counsel's investigation or even whether he hired an investigator; (6) failure to present a concise explanation of the theory of the defense to the jury to consider during deliberations, with no explanation of why counsel was deficient where he requested and received jury instructions reflecting the defense theory of the case (including instructions on involuntary manslaughter and on voluntary intoxication as bearing on the requisite *mens rea* for first-degree murder) and reasonably cogently explained the defense theory of the case to the jury during closing argument, R&R at 32-38. **There is also nothing to add to the Magistrate's agreement with the Superior Court's rejection of IAC subclaim 7, incomplete investigation of the defense's psychiatric expert.** Petitioner's counsel questioned the psychiatrist extensively about petitioner's meth use and its potential effect on his mental state at the time of the killing. Moreover, the psychiatrist testified about petitioner's possible meth-induced lack of criminal intent when he killed Fisher, R&R at 38.

**As for IAC subclaim 8, counsel's decision to withdraw his request for CALCRIM 580 regarding the lesser-included-offense of involuntary manslaughter,** the Magistrate rightly concludes that California law did not support the delivery of CALCRIM 580 on the trial record here, R&R at 39 and that therefore it would have been futile to continue demanding delivery of that instruction, R&R at 39-40 (citing *Kimmelman*, 477 U.S.

at 375, and two Ninth Circuit decisions) ; *see also Lockhart v. Fretwell*, 506 U.S. 364, 374, 113 S. Ct. 838, 845 (1993) (J. O'Connor, concurring) ("Since *Strickland*, we have recognized that neither the likely effect of perjured testimony nor the impact of a meritless Fourth Amendment objection is an appropriate consideration in the prejudice inquiry.") (citing, *inter alia*, *Kimmelman*, 477 U.S. at 382, 106 S. Ct. at 2586).

**Petitioner's objections do nothing to identify any specific legal or logical defect in the Magistrate's reasoning regarding his ineffective-assistance claims.** His objections make only conclusory assertions:

> Inarguably trial counsel was ineffective for (1) erroneously pulling [his request for] CALCRIM 580 from submission to the jury; (2) failing to properly question a key witness with respect to "What did the witness hear regarding Fisher's (victim's) statement that everyone 'was a snitch and he was going to kill them all (petitioner inclusive)'; (3) failing to determine the amount of methamphetamine petitioner consumed on the day of the murder and if that amount was sufficient to cause hallucinations – including follow-up questions; (4) failing to object to jury instructions; (5) failing to object to prosecution witnesses being coached and/or led during testimony; (6) failing to employ services of an investigator; and (7) failing to question expert witness regarding mental defect of petitioner.
>
> Under *Strickland v. Washington* . . . and progeny, the record clearly shows petitioner received IAC. Indeed, trial counsel was so ineffective *he even failed to do something so simple as file a timely notice of appeal* despite petitioner's timely request he do so and counsel's promise to do so. This is classic ineffective assistance. No reasonably competent attorney would have engaged in counsel's failings and the jury would certainly have come back with a lesser manslaughter or not[-]guilty verdict absent counsel's repeated failings which completely infected the trial and rendered it fundamentally unfair.

Doc 23 at 2-3. As to none of these instances does petitioner cite any Supreme Court authority or point to specific evidence and explain how it would have aided his defense if his attorney had acted differently.

As to the claim that trial counsel rendered ineffective assistance by failing to file a timely notice of appeal, petitioner failed to assert this claim in his petition or even his traverse, so it is not properly before the Court. *See Brown v. McDonald*, 2013 WL 1969934, *1 (C.D. Cal. May 13, 2013); *accord Maye v. Thomas*, 2013 WL 6407730, *3 (N.D. Ala. Dec. 6, 2013). Moreover, a section 2254 petitioner has the burden of showing that he exhausted each claim in the state courts. *See* 28 U.S.C. § 2254(d)(1)(A); *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part o.g. by Fay v. Noia*, 372 U.S. 391 (1963). Here, petitioner has not endeavored to carry

his burden of showing that the exhausted the "failed to file a notice of appeal" IAC claim, so that is a second basis for declining to consider it. *See Pruitt v. Busby*, 2013 WL 5651441, *1 (C.D. Cal. Oct. 16, 2013) (Wu, J.) ("Petitioner did not raise this argument in state court or in his federal Petition; he may not raise it for the first time in his Objections to the R&R, particularly given that it has not been exhausted in state court. Accordingly, the Court does not address it.") (citing *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008)).

### ANALYSIS: GROUND 3, FAILURE TO HOLD A COMPETENCY HEARING

Finally, the Magistrate is right to conclude that there was no AEDPA legal error in the Superior Court's implicit rejection of petitioner's claim that his trial counsel rendered ineffective assistance by failing to request a hearing on petitioner's competency to stand trial. As the Magistrate notes, the Supreme Court holds that a due-process evidentiary hearing is constitutionally required whenever there is substantial evidence that the defendant may be mentally incompetent to stand trial, and evidence is "substantial" for this purpose if it raises a reasonable doubt about his competency to stand trial, *see* R&R at 41 (citing, *inter alia*, *Pate*, 383 U.S. at 385).

**The Court disclaims the Report's reliance, however, on Ninth Circuit precedent on when a competency hearing is required,** *see* **R&R at 42 lines 6-9.** Instead, the Court follows only the Supreme Court decision cited by the Report on this score, *Pate*, 383 U.S. at 385. There the Supreme Court held that a hearing is required only if the evidence raises a bona fide doubt as to the defendant's competence to stand trial, *see* R&R at 42. **The Court also disclaims the Report's reliance on Ninth Circuit precedent for the proposition that "counsel is not a trained mental health professional and his failure to raise petitioner's competence does not establish that petitioner was competent",** *see* **R&R at 42 (quoting** *Odle***, 238 F.3d at 1089).**

Applying only U.S. Supreme Court holdings to the facts bearing on this IAC claim, the Court agrees that petitioner has not shown that the state courts committed any AEDPA error in rejecting this claim. Petitioner identifies no record evidence which a reasonable factfinder could take as tending to show that he did not understand the proceedings or was unable to participate in his defense and consult with his lawyer per *Dusky*, 362 U.S. at 402: there was no evidence of petitioner being irrational or paranoid at trial, nor did he exhibit outbursts or other disruptive or abnormal behavior, R&R at 44-45. The state courts could reasonably find that petitioner's testimony was lucid and that he withstood aggressive cross-examination, as the R&R finds at 45.

Petitioner testified that he was under a doctor's care due to alleged "mental diseases" as a child and was prescribed a number of drugs; that he was depressed at the time of trial (thought not that he had been diagnosed with or prescribed medication for the alleged depression); and that he used meth and that this use caused him hallucinations and otherwise affected his mental health, *see* R&R at 43, but there is no Supreme Court authority suggesting that any of that evidence could reasonably be perceived as tending to raise doubt about his competency to stand trial, let alone a "bona fide" doubt. **The Court disclaims any reliance on California law or Ninth Circuit law in making this determination, and thus declines to adopt R&R at page 43 line 26 (starting with *See Torres*, 223 F.3d at 1108") through and including the citation to *Panah*, 35 Cal.4th at 434 n.10 at R&R page 44 line 9.** Lastly, the Magistrate cogently reasons that the defense's psychiatric expert evaluated petitioner over three sessions totaling six hours, and the expert never testified or reported that he had any concerns about petitioner's mental state or competency during those sessions, *see* R&R at 43. Therefore, it was not objectively unreasonable for the state court to conclude that there was nothing in the record to induce competent defense counsel to question petitioner's competency to stand trial such as to warrant further inquiry, i.e., that counsel did not perform deficiently in "failing" to request a competency hearing, *see* R&R at 46.

**Petitioner's objection on the competency-hearing claim** cites no Supreme Court authority and identifies no legal or logical defect in the Magistrate's reasoning. Petitioner begins by noting that his trial attorney "was aware of petitioner's mental health issues as a child, and also as an adult resulting from meth addiction and abuse." Doc 23 at 3. He makes a conclusory reference to unidentified publications showing "[t]he adverse effects of methamphetamine on a normal person's brain functioning, mental faculties and reasoning . . . ." Petitioner next states that "[t]he severe adverse effects of meth on the brain of someone which does not function normally as a result of mental illness from childhood can only be determined by experts at a competency hearing", *id.* But he does nothing more than assert, "[t]hese mental health / competency issues continue today, as can be confirmed by petitioner's medical and mental health records," without citing any evidence that was in the state-court record or any allegedly new evidence he would proffer at a hearing. This objection lacks merit.

**Finally, as stated by the Magistrate, petitioner's failure to show that the record could support federal habeas relief defeats his request for an evidentiary hearing in this court**. *See* R&R at 47 (citing,

*inter alia*, *Pinholster*, 131 S. Ct. at 1399); *see also McQuiggin*, 133 S. Ct. at 1933 (noting that 28 U.S.C. § "2254(e)(2) . . . generally bars evidentiary hearings in federal habeas proceedings initiated by state prisoners," with "an exception for prisoners who present new evidence of their innocence"); *Ryan v. Gonzales*, – U.S. –, 133 S. Ct. 696, 708 (2013) ("[T]he decision to grant an evidentiary hearing, is 'generally left to the sound discretion of district courts.'") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Petitioner's objections do not undermine this reasoning, merely asserting that he is entitled to an evidentiary hearing, *see* Doc 23 at 3.

## ORDER

Petitioner's objection **[Doc # 23] is overruled**.

The Report and Recommendation **[Doc # 19] is ADOPTED in part.**

The Court **DECLINES TO ADOPT these portions** of the Report and Recommendation:

– Page 17 lines 4 through 19 (starting with "Moreover, the Court concurs" and ending with "instruct the jury, sua sponte, on involuntary manslaughter.");

– Page 15 lines 11 through 14, the sentence which begins "The burden of demonstrating" and ends with the citation of *Henderson*, 431 U.S. at 154;

– Page 19 lines 6 through 28 (alternative holding based on *Brecht* prejudice);

– Page 43 line 26 (starting with "*See Torres*, 223 F.3d at 1108") through and including the citation to *Panah*, 35 Cal.4th at 434 n.10 at Page 44 line 9;

The Report and Recommendation **is otherwise adopted.**

The petition for writ of habeas corpus **[Doc # 1] is DENIED** for lack of merit.

A certificate of appealability is **DENIED**.

As required by Fed. R. Civ. P. 58(a)(1), the Court will enter final judgment in favor of the respondent and against the petitioner by separate document.[4]

---

[4]

*See Cox v. California*, 2013 WL 3755956, *2 n.2 (C.D. Cal. July 16, 2013) (Fairbank, J.) (citing, *inter alia*, *Jayne v. Sherman*, 706 F.3d 994, 1009 (9th Cir. 2013)). *Accord Rainey v. Lipari Foods, Inc.*, 546 F. App'x

Said judgment will not be appealable until and unless petitioner obtains a certificate of appealability from the U.S. Court of Appeals for the Ninth Circuit.[5]

IT IS SO ORDERED.

---

583, 585 (7th Cir. 2013) ("Rule 58(a) generally requires that a judgment be set out in a separate document, . . . .") (citing *Brown v. Fifth Third Bank*, 730 F.3d 698, 699 (7th Cir. 2013)); *Brown v. Recktenwald*, 550 F. App'x 96, 97 n.2 (3d Cir. 2013) (per curiam) ("The District Court did not comply with the separate order rule set forth in Federal Rule of Civil Procedure 58(a)."); *C.A. Jones Mgmt. Group, LLC v. Scottsdale Indem. Co.*, 2014 WL 811654, *10 (W.D. Ky. Feb. 28, 2014) ("Federal Rule of Civil Procedure 58 requires that '[e]very judgment must be set forth . . . on a separate document.").

"To comply with Rule 58, an order must (1) be self-contained and separate from the opinion; (2) note the relief granted; and (3) omit or substantially omit the district court's reasons for disposing of the claims." *Daley v. U.S. Attorney's Office*, 538 F. App'x 142, 143 (3d Cir. 2013) (per curiam) (citing *LeBoon v. Lancaster Jewish Cmty. Ass'n*, 503 F.3d 217, 224 (3d Cir. Ctr. 2007)). Conversely, "[a] combined document denominated an 'Order and Judgment,' containing factual background, legal reasoning, as well as a judgment, generally will not satisfy the rule's prescription." *In re Taumoepeau*, 523 F.3d 1213, 1217 (10th Cir. 2008).

[5] *See Muth v. Fondren*, 676 F.3d 815, 822 (9th Cir.) (citing 28 U.S.C. § 2253(c)(1)(B)), *cert. denied*, – U.S. –, 133 S. Ct. 292 (2012). Likewise, FED. R. APP. P. 22(b)(1) provides in pertinent part that "if the district judge has denied the certificate, the applicant may request a circuit judge to issue the certificate." *See Silva v. Woodford*, 279 F.3d 825, 832 (9th Cir. 2002) ("[A]s an appellate court panel, we are empowered to issue a COA pursuant to Fed. R. App. P. 22(b)(1) and [28 U.S.C.] § 2253(c)(1).").

MINUTES FORM 90  Initials of Deputy Clerk ___jmb___
CIVIL - GEN